[Civ. No. 9201. First Appellate District, Division Two.—January 25, 1934.]

JACKSON AND PERKINS COMPANY OF CALIFORNIA (a Corporation), Appellant, v. BYRON–BETHANY IRRIGATION DISTRICT (a Corporation) et al., Respondents.

John J. Jones for Appellant.

Dennett & Zion for Respondents.

STURTEVANT, J.—The trial court made an order sustaining a demurrer to the plaintiff's second amended complaint without leave to amend. From the judgment entered thereon the plaintiff has appealed.

The complaint contains two counts. In the first count, in effect, the plaintiff alleged that it is a Maryland corporation doing business in this state; that defendant district is a public corporation organized under the Statutes of 1897, page 254; that the personal defendants are directors of the district; that John Doe is the fictitious name of the manager of the district; that plaintiff is engaged in raising choice roses and nursery stock; that on November 1, 1930, plaintiff

leased a piece of land, describing it, situated in Contra Costa County, California; that on December 1, 1930, it entered into possession; that said land is located within the boundaries of the defendant district but that plaintiff is not an inhabitant of said district. Continuing the plaintiff alleged:

"VII.

"That prior to the execution of said indenture of lease hereinabove referred to, plaintiff entered into an agreement with said defendants for the furnishing of water suitable for irrigation purposes for the irrigation of the nursery stock contemplated to be planted by plaintiff corporation upon said demised premises. That in entering into said agreement said defendant, Byron-Bethany Irrigation District, and said defendants were not acting in any governmental, political or public capacity, but were exercising merely proprietary and private rights.

"That said agreement was consummated by said defendants agreeing to furnish plaintiff necessary and suitable water for irrigation purposes at an agreed price per acre foot.

"VIII.

"That thereafter and on or about the 2nd day of September, 1931, the defendants in the exercise of their proprietary and private rights and not acting in any governmental, political or public capacity, furnished water to plaintiff for the irrigation of the nursery stock belonging to plaintiff and growing upon said hereinabove described premises. That on said 2nd day of September, 1931, and for several days prior thereto, said water so furnished by said defendants contained large amounts of salt, which said fact was known to said defendants. That on the said 2nd day of September, 1931, plaintiff corporation requested the furnishing of water suitable for irrigation purposes. That on said 2nd day of September, 1931, said defendants knew that the water available for irrigation purposes contained large amounts of salt, which said fact was not known to plaintiff corporation, nor did defendants, or any of them, convey said information or give plaintiff any notice whatsoever of the presence of said fact.

"That on said 2nd day of September, 1931, on the date when said water so furnished as aforesaid was turned upon the premises occupied by plaintiff corporation, there was

among other varieties of roses then growing upon said demised premises belonging to plaintiff corporation, some 92,000 roses, of the varieties commonly known and designated as follows: 6,000 Talisman, 6,000 President Herbert Hoover and 80,000 Hollywood.

"That by reason of said water containing large amounts of salt as hereinabove alleged, said nursery stock of 92,000 roses above described, was completely destroyed, and by reason thereof great damage was occasioned to plaintiff.

"IX.

"That on September 2, 1931, the market value of Talisman roses was 12c each, the market value of President Herbert Hoover roses was 12c each, and the market value of Hollywood roses was 16c each. That the total market value of all nursery stock destroyed aggregated the sum of $14,240."

In the second count, in the place of paragraph VIII, *supra,* the plaintiff inserted a paragraph worded as follows:

"II.

"That thereafter and on or about the 2nd day of September, 1931, defendants in the exercise of their proprietary and private rights and while not acting in any governmental, political or public capacity, furnished water to plaintiff for the irrigation of the nursery stock belonging to plaintiff and growing upon said hereinabove described premises. That on said date and for several days prior thereto, the water belonging to said defendants and so furnished as aforesaid, contained large amounts of salt, which said fact was known to defendants. That defendants knew that the presence of salt to the extent that it was then present in said water was highly destructive to plant life, but notwithstanding this fact defendants with full knowledge of the presence of said salt in large quantities in said water and of the highly destructive properties of water containing such quantities of salt, wilfully and negligently turned said water upon the lands hereinabove described." Otherwise the allegations are the same.

In their briefs both counsel treat the case as though the complaint contained only one count. Although the complaint placed its charge against the district, its directors, and its managing agent, the briefs are confined to a consideration of the liability of the district, and are silent as to

the other defendants. In what follows we will confine our discussion to the points made in the briefs and will discuss those points in the order as presented by the plaintiff.

Both counts sound in tort. (Cooley on Torts, p. 2.) The defendants assert, and the plaintiff does not contend to the contrary, that the district is not liable in an action pleading a tort. (*Nissen* v. *Cordua Irr. Dist.*, 204 Cal. 542 [269 Pac. 171].) In its brief the plaintiff states:

"This action was instituted by appellant corporation seeking to recover damages for an alleged violation of the terms of a private contract between it and respondent Irrigation District, by the terms of which the latter was to furnish water suitable for irrigation purposes at an agreed price per acre foot.

. . . . . . . . . . . .

"Under the pleadings, it is appellant's contention that respondent district through its agents was acting in the capacity of a private contractor. It is conceded that if it was acting as an arm of the state, performing a governmental function, appellant may not recover.

"In determining whether an act is in the performance of a governmental function, the courts have on occasions encountered difficulties in deciding on what side of the line the facts of a particular case place it; but the underlying principles which guide are quite generally agreed upon.

. . . . . . . . . . . .

"In this regard, we respectfully submit that respondent Irrigation District was under no obligation to furnish water to appellant for the reason that according to the allegations of paragraph VII of appellant's second amended complaint, the contract in question was entered into prior to the execution of the lease under which appellant entered into possession of the land in question. Therefore, we have a set of facts which for purposes of demurrer must be admitted as true in which respondent Irrigation District through its duly authorized representatives entered into an agreement with appellant corporation to furnish water suitable for irrigation purposes sufficient for the project which appellant was contemplating entering upon.

"Concededly appellant was not an owner of land within the district, neither was it at the time of the entering into the contract in question a lessee of a land owner within the

district; therefore, the respondent district was under no obligation to furnish water to appellant under any circumstances, and as a consequence when it entered into the contract in question it was not exercising any governmental function, but was acting in purely a proprietary manner.

.   .   .   .   .   .   .   .   .   .   .   . .

"In the light of the foregoing, therefore, do we urge that respondents, having entered into the contract prior to the execution of the lease whereby appellant became entitled to farm land within the boundaries of respondent district, and the latter not being obligated to furnish water to appellant, respondent district was acting in a proprietary capacity and not exercising any governmental function . . . "

As noted above, the plaintiff frankly concedes that if the defendant district was acting as an arm of the state, performing a governmental function, the plaintiff may not recover. But, it claims, that according to its allegations, " . . . prior to the execution of said indenture of lease hereinabove referred to, plaintiff entered into an agreement with said defendants for the furnishing of water suitable for irrigating . . . " the lands thereafter leased. In other words, the plaintiff's claim is that the defendant district must at its peril first ascertain an applicant's title to real estate before the district accepts a contract to serve such applicant or otherwise the district becomes liable as in its proprietary capacity. The plaintiff does not cite any authority sustaining its contention. We know of none. The district is concerned with furnishing water to its patrons and collecting for the service—it is in no manner interested in the title of any one of the patrons to the specific tract of land that is so served.

The plaintiff alleged: "That in entering into said agreement said defendants were not acting in any governmental, political or public capacity, but were exercising merely proprietary and private rights." The defendants contend such allegations are conclusions of law. We think it is clear that they are. (21 Cal. Jur., p. 25; *Bailes* v. *Keck,* 200 Cal. 697, 703 [254 Pac. 573].)

Manifestly, supplying water to lands within the district was the primary function of the defendant district. No facts are alleged showing the district performed other functions. There is no allegation that the defendant sup-

plied or had facilities to supply anything but one kind of water. There is no allegation that it had any surplus waters. Nor is there any allegation that the water supplied to the plaintiff was different in kind from the water supplied to each and every other patron of the district. It is therefore patent that the complaint does not allege any fact or facts showing that in supplying the plaintiff it was acting in whole or in part in a proprietary capacity as distinguished from a governmental capacity.

It is conceded by both sides that the defendant district is a public corporation and as such an agency of the state. (*Turlock Irr. Dist.* v. *White,* 186 Cal. 183 [198 Pac. 1060, 17 A. L. R. 72].) It follows that its officers are public officers. (*Rose* v. *Superior Court of Imperial County,* 80 Cal. App. 739 [252 Pac. 765].) It will be presumed, therefore, that the defendants have regularly performed their duties. (Code Civ. Proc., sec. 1963, subd. 15.) That is, in the absence of allegations to the contrary, it will be presumed the district acted within its ordinary governmental capacity.

Moreover, when the district was being organized it became necessary to show that the water to be used was suitable for irrigation and that the lands to be irrigated therewith would be benefited by its use. (Stats. 1897, p. 254.) The order of the board of supervisors authorizing the formation of the district is, in this collateral attack, conclusive as to those facts. (*Board of Directors* v. *Tregea,* 88 Cal. 334, 354 [26 Pac. 237]; *Miller & Lux Inc.* v. *Secara,* 193 Cal. 755, 766 [277 Pac. 171].) Therefore we must assume, in the absence of other allegations, that the water furnished by the defendant, whether it contained some salt or otherwise, had been determined to be suitable water for irrigation and beneficial to the lands using it.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 26, 1934, and the following opinion was then rendered thereon:

THE COURT.—In denying said petition we withhold our approval of the last paragraph of the opinion of the Appellate Court as the statements therein are not necessary to said decision.